THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ANTONIO CARRILLO, Defendant-Appellant.

(No. 59683;

First District (1st Division)—April 7, 1975.

James J. Doherty, Public Defender, of Chicago (Saul H. Brauner and Richard D. Kharas, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Thomas D. Rafter, Assistant State's Attorneys, and P. Mark Thompson, Law Student, of counsel), for the People.

Mr. JUSTICE EGAN delivered the opinion of the court:

The defendant, Antonio Carrillo, was convicted of rape and burglary after a bench trial and sentenced to terms of 6 to 18 years for rape and 3 to 9 years for burglary. The defendant contends that he was entitled to discharge under the four-term act (Ill. Rev. Stat. 1971, ch. 38, par. 103—5 (a)); he was not proved guilty of rape beyond a reasonable doubt; and the State failed to prove the necessary elements of intent in the burglary charge.

The defendant and the prosecutrix were both residents of the same city in Mexico, were both in this country illegally and both lived in an apartment in Chicago with his brother and sister-in-law and their five children and his cousin. Later, the prosecutrix and the defendant had their own separate apartments in the same building and sometimes ate together. She testified that on June 3, she was awakened by the defendant who tried to kiss and fondle her. She ran around the room trying to elude him. She told him she would jump out the window if he didn't leave her alone. She tried to jump out the window but he pulled her inside. He told her he would leave and started toward the door; then he turned back toward her and she went out the window and hung by her hands. When he sat down on the sofa and asked her to talk, her arms became tired and she fell to the street from her third floor apartment. When she regained consciousness she was in bed in his apartment; he was nude and was having intercourse with her.

After he was finished, she told him to call an ambulance but he could not because he did not speak English. She was bleeding from the head and in great pain. After she called an ambulance, he put a pair of his pants and a shirt on her over her nightgown and took her down to the street where he stopped a police car. Pursuant to the defendant's instructions, she told the police that she had fallen down some stairs. At the hospital, when the police officer said he did not understand how she could get the injury she had from falling down stairs, she told him the defendant had caused her to jump out a window and later raped her. A vaginal examination disclosed the presence of spermatozoa. At the time

of trial, deportation proceedings were pending against her and she had applied for welfare under another name. She denied having had any previous sexual relations with the defendant.

The defendant testified through an interpreter that he knew the prosecutrix in Mexico and had had sexual relations with her there, in his brother's apartment in Chicago and in his own apartment. The last time was on June 1. He was awakened by the sound of the prosecutrix shouting and saw her in the hallway. He was not permitted to testify to what the complaining witness said to him. He tried to calm her down and took her into her apartment. She told him to leave and he did. He later used the key she had given him to open her door. He wanted to see what was troubling her. When he went to the window he saw her lying on the ground. He went downstairs and assisted her to his apartment where he dressed her in a pair of his pants and a shirt and assisted her to the telephone. She spoke to the operator and asked for an ambulance. He went outside with her and remained until the police arrived. He denied having relations with her that evening.

The defendant was arrested on June 3, 1972, and first appeared in the Felony Court on June 5, at which time the State requested that he be examined by the Behavior Clinic. The case was continued on the State's motion until July 24 and again on July 24 until August 14, because the report from the Behavior Clinic had not been completed. On August 14, the record shows the following:

"PUBLIC DEFENDER: We have an interpreter, Mr. Al L. Martinez. He informs me he is unable to communicate with the defendant. He doesn't make sense.

STATE'S ATTORNEY: The first time this case was up June 5th, we asked for Dr. Kelleher.

THE COURT: I don't have it.

COURT SERGEANT: My record shows that also.

THE COURT: There may be a report available; and if so, we can get it over the phone.

Let's pass it.

(Whereupon, the case was passed and called later.)

THE COURT: Dr. Kelleher didn't know anything about it, right?

PUBLIC DEFENDER: Right.

Motion defendant.

THE CLERK: September 11.

THE COURT: Let the file reflect complaining witness in court."

On September 11, the court was informed by the State's attorney that the complaining witness was still in the hospital and the case was con-

tinued until October 17 on motion of the State. On October 17, a preliminary hearing was conducted and the defendant was held over to the grand jury. On November 17, the defendant filed a motion to dismiss, which was heard and denied on January 9, 1973.

At the hearing the defendant testified that on August 14 he spoke to an interpreter named Martinez, who he believed worked "around the elevator" in the Criminal Court Building. The interpreter only asked him what happened when he was arrested. He did not know what the public defender told the judge since no one interpreted the proceedings for him.

Dr. Jose Molina testified that he examined the defendant pursuant to court order on August 23, that he spoke to him in Spanish and had no trouble communicating with him and that the defendant was, in his opinion, able to communicate with his attorney.

The defendant had been in custody 120 days as of October 1 and, unless any delay could be attributed to him, the statutory period had elapsed at the time he was held over to the grand jury. It is agreed by both sides that this case hinges on whether the continuance of August 14 may properly be charged to the defendant. We conclude under the particular facts present here it may not and that the defendant is entitled to be discharged.

■■ The right to a speedy trial is a constitutional one which may be waived. (*People v. Milani*, 34 Ill.2d 524, 216 N.E.2d 816.) And the defendant may be bound by the acts of his attorney in requesting or acquiescing in a delay. Implicit in the rule charging a defendant with waiver by his attorney, however, is the supposition that the attorney has had an opportunity to confer with the defendant. The defendant was not represented by counsel when he first appeared in court on June 5. For some unexplained reason the State asked for a psychiatric examination. The defendant had no history of mental disorder and the facts of the case would not necessarily suggest any. It thus appears that the defendant was never consulted by anyone before August 14, some 72 days after his arrest, and on that day he "consulted" with some person named Martinez, who informed the public defender that the defendant did not "make sense" and that he was unable to communicate with the defendant. The record is not clear about who was present at the hearing since the court observed that the "complaining witness" was in court. Whether the court was referring to the police officer or the prosecutrix is questionable since the State's attorney informed the court on September 11 that the "complaining witness" was still in the hospital. Nor is the record clear that the public defender said, "Motion defendant" (compare *People v. Vanderbilt*, 27 Ill.App.3d 168), but, if he did, it cannot be attributed to the defendant in this case.

■■ We wish to emphasize that this case is unlike *People v. Browry*, 8 Ill.App.3d 599, 290 N.E.2d 650, wherein the defendant, not the State, requested a psychiatric examination. We also wish to make it clear that we make no broad holding that the record must affirmatively show every time an attorney requests or agrees to a continuance that he has consulted with the defendant and has advised him, for such a holding would place an intolerable burden on the trial courts. On motions for continuances, as in jury waivers, the trial court is entitled to rely on the professional responsibility of the defendant's attorney that when he requests a continuance it was done knowingly and understandingly consented to by his client. (Compare *People v. Sailor*, 43 Ill.2d 256, 261, 253 N.E.2d 397.) There are other examples of delays which may be caused by counsel personally, such as illness, engagement in other courts or an inadequate time for preparation for trial, which may be charged to the defendant. But under the particular facts of this case the State and the judge in the Felony Court were charged with knowledge that the State, not the defendant, requested a psychiatric examination and that the case would not have been heard on August 14 since the Behavior Clinic had not yet examined the defendant. They are charged with the knowledge that the defendant did not speak English and no one was interpreting the proceedings in open court for him; and, most important, that the public defender appearing on August 14 had not been able to consult with him. We judge, therefore, that the record affirmatively shows that the delay was not caused by the defendant himself nor the public defender and that the public defender, as the court knew, could not speak for the defendant. The motion to dismiss should have been allowed.

In view of our holding, it is unnecessary to pass on the defendant's contention that he was not proved guilty beyond a reasonable doubt or that the element of intent in the burglary charge had not been proved. The judgment of the circuit court is reversed.

Judgment reversed.

BURKE, P. J., and GOLDBERG, J., concur.